**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WALTER CARMELO CALERO CRUZ,<br>Petitioner,<br>v.<br>FACILITY ADMINISTRATOR, GOLDEN STATE ANNEX, et al.,<br>Respondents. | Case No. 1:26-cv-05488-JLT-FJS<br>A-Number: 240-129-735<br>ORDER DENYING PETITIONER'S MOTION TO ENFORCE JUDGEMENT; ORDER DENYING MOTION TO SHORTEN TIME AS MOOT<br>(Docs. 12, 14.) |

On July 24, 2026, this Court entered judgment on Petitioner Walter Carmelo Calero Cruz's petition for a writ of habeas corpus. (Doc. 10.) The Court ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing at which Respondents are to bear the burden of proof by clear and convincing evidence to show that Petitioner presents a flight risk or danger to the community. (*Id*. at 4.) Beginning on July 31, 2026, and then continuing to August 7, 2026, a bond hearing was held pursuant to this Court's order. (Doc. 12 at ¶ 6; Doc. 17-1 ("IJ Order".) On August 26, 2026, Petitioner filed a motion to enforce the Court's judgment, seeking an order requiring his immediate release or, in the alternative, a new bond hearing. (Doc. 12 at ¶ 48.) For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

This Court has summarized the factual and procedural history behind this action in a

previous order and incorporates that by reference here. (*See* Doc. 10.) On July 31, 2026, Petitioner appeared before an immigration judge with his attorney present. (*See* Doc. 21, Digital Audio Recording "DAR" I; Doc. 22, "DAR II".) With respect to the legal framework governing the hearing, the IJ explicitly acknowledged at the outset of the July 31 bond hearing that the hearing was being held pursuant to a district court order and that the Department of Homeland Security bore the burden of proof to show by clear and convincing evidence that Petitioner poses a danger to the community or flight risk. (DAR I at 1:57 – 2:12.) The IJ noted that the following evidence had been submitted in the record: (1) a Notice to Appear charging Petitioner as removable, (2) this Court's order, (3) Petitioner's legal brief, (4) Petitioner's supporting documents, (5) Petitioner's Form I-213, and (6) Petitioner's FBI "RAP" Sheet. (*Id*. at 3:35 – 4:22.) DHS argued first and presented, *inter alia*, the following evidence in support of denying bond: (1) Petitioner entered the United States unlawfully in September of 2022, (2) Petitioner appeared to have worked unlawfully for up to a year prior to obtaining a valid work permit, (3) there was no evidence Petitioner filed tax returns for the three years he was employed, (4) there was no evidence of Petitioner having a permanent fixed address, (5) there was no evidence of Petitioner obtaining of valid driver's license, and (6) Petitioner's tenuous family ties. (*See* DAR I at 6:10 – 7:12; DAR II at 1:00 – 2:00.) As to the specific issue of dangerousness, DHS noted that on July 4, 2026, Petitioner was arrested for driving under the influence and was "charged with having a blood alcohol content of at least 0.8." (DAR II at 1:00 – 2:00.) DHS argued that driving under the influence is a dangerous crime and "shows dangerousness to persons and communities in the United States," "recklessness and failure to take responsibility" for the safety of others. (*Id*. at 2:28 – 2:57.)

Beginning on July 31 and continuing to August 7 due to technical issues, Petitioner's attorney presented rebuttal evidence and testimony supporting release, including, *inter alia*, (1) evidence that Petitioner had lawfully paid his taxes and worked pursuant to a valid work permit (DAR II at 5:00-6:20), (2) a letter from his employer demonstrating his substantial work history (*id*. at 6:20 – 7:00), and (3) a letter from his landlord establishing his residency for the eight months prior to his detention. (DAR III at 3:57 – 4:25.) Petitioner's attorney also argued that

DHS had failed to demonstrate that Petitioner's recent arrest for driving under the influence made him a danger to the community. (DAR III at 4:47 – 5:53.) At the conclusion of the bond hearing, the IJ made an oral ruling that DHS had met by clear and convincing evidence that Petitioner was both a danger and a flight risk and denied bond on that basis. (*Id*. at 7:46 – 7:52.) On August 7, 2026, the IJ issued an amended written order in which she outlined the evidence and legal bases for denying Petitioner bond. (*See* IJ Order.) Petitioner timely filed a bond appeal to the Board of Immigration Appeals on August 12, 2026, which remains pending. (Doc. 12 at ¶ 20.)

Petitioner now brings a motion to enforce arguing that, although the hearing occurred, the IJ's ruling denying bond failed to comply with the Court's order because the IJ (1) improperly shifted the burden of proof to the Petitioner as to demonstrating a lack of dangerousness and (2) failed to explain how Respondents met their burden of proof to demonstrate flight risk given Petitioner's history of compliance with reporting requirements. (*See* Doc. 12.)

## II. LEGAL STANDARD

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (The Court's review for abuses of discretion is limited to those which allege violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions) (citation and quotations omitted). In other words, "[i]n reviewing the IJ's

determination, a district court['s] ... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.' " *Quan v. Barr*, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)).

While district courts are "under no obligation to address [Petitioner's] new arguments under the ambit of ensuring compliance with the earlier order," *Leonardo* 646 F.3d 1157 at 1161, the reviewing court must always bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

In their opposition, Respondents argue that the motion to enforce should be denied on the basis that Petitioner has failed to exhaust his administrative remedies. (Doc. 17 at 2-3.) As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000

(9th Cir. 2004) (quotation marks and citation omitted).

This Court has previously waived the prudential exhaustion requirement for enforcement motions challenging the legality of a court ordered bond hearing due to the irreparable harm resulting from further prolonging the Petitioner's already lengthy detention. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5, n.7 (E.D. Cal. Jan. 29, 2026) *see also, Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026) (excusing exhaustion despite the petitioner not making "an explicit showing" of an excuse in the motion to enforce, because the court had previously found ongoing irreparable harm in its previous habeas order). Such a waiver, however, does not expand the narrow scope of the Court's review: the Court will only determine whether the bond hearing was constitutionally adequate as required by its prior order, and not delve into areas of discretionary decisions made by the IJ. *See, infra*, Legal Standard.

**B. Adequacy of the Bond Hearing**

Having carefully considered and reviewed Petitioner's submissions and the digital audio recordings of the July 7 and August 8 bond hearings, the Court finds that that Petitioner has not demonstrated that the IJ abused her discretion in such a way as to violate Petitioner's due process rights and, by extension, this Court's prior habeas order.

1. <u>Burden of Proof</u>

First, the Court considers whether the Immigration Judge applied the incorrect legal standard at the bond hearing or improperly placed the burden on Petitioner. In its prior habeas order, the Court ordered that Respondents provide Petitioner with a bond hearing where the Government bore the burden of establishing that detention was necessary by clear and convincing evidence. (Doc. 10 at 4.) The clear and convincing standard requires DHS to present evidence that establishes "an abiding conviction that the truth of its factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984) (internal citation and quotation marks omitted); *see Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015). This is only the case where "the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence... offered in opposition." *Colorado*,

467 U.S. at 316, 104 S.Ct. 2433.

Petitioner challenges the IJ's application of the burden, arguing that she improperly shifted the burden to Petitioner to prove lack of dangerousness by requiring that he "supply affirmative proof that the Government did not present." (Doc. 12 at ¶ 28.) The Ninth Circuit has explained that if the immigration court "expressly cited and applied the relevant case law in rendering its decision" the Court accepts that it "applied the correct legal standard" unless there is an indication that "something is amiss." *Martinez*, 124 F.4th at 785 (cleaned up); *see Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). Here, the IJ cites to the correct standard. (DAR I at 1:57 – 2:12.) However, Petitioner cites numerous "red flags" in the IJ's order. First, Petitioner cites two factual findings on which the IJ considered in finding that DHS had met its burden of proof as to dangerousness: (1) that "[Petitioner] has not meaningfully argued that he is factually innocent" and (2) that "[Petitioner] has also not submitted significant evidence relating to rehabilitation vis a vis the driving under the influence of alcohol arrest other than letters of family and friends attesting generally to his good moral character and positive character traits." (Doc. 12 at ¶¶ 28-29) (citing IJ Order at 1-2). Petitioner argues that the IJ's reliance on such reasoning in denying bond was impermissible given DHS failed to "identify the conduct underlying the arrest beyond the charge labels." (*Id*. at ¶ 28.) Second, Petitioner contends that the IJ's citation to *Matter of Panin,* 28 I & N Dec. 771, 772-73 (B.I.A. 2024) is an additional indication that the IJ placed the burden on Petitioner to establish that release is warranted. (*Id*. at ¶ 29.)

As a threshold matter, this Court's prior habeas order directed Petitioner's bond hearing to comply with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (2011), which expressly called for immigration judges to apply the factors set forth at *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006) to determine whether noncitizens present a flight risk or danger to the community. *See Singh*, 638 F.3d 1196 at 1206. Pursuant to *Guerra*, IJ's have broad discretion to consider a number of non-exhaustive factors to determine whether the detainee merits release on bond, including: family ties and their connection to available immigration relief; employment history; record of appearance in court; criminal record "including the extensiveness of criminal activity,

the recency of such activity, and the seriousness of the offenses"; history of immigration violations; attempts to flee; and manner of entry to the United States. 24 I. & N. Dec. 37 at 40.

In assessing dangerousness, "[a]lthough an alien's criminal record is surely relevant to a bond assessment, *Guerr*a contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." *See Singh,* 638 F.3d 1196 at 1206. Rather, IJ's must also consider "the recency and severity of the offenses." *Id*. Furthermore, under BIA case law, immigration judges may properly "consider not only the nature of a criminal offense but also the specific circumstances surrounding [Petitioner's] conduct," *Matter of Siniauskas*, 27 I&N Dec. 207, 208-09 (BIA 2018), as well as "any unfavorable evidence of [his] conduct, including arrests that did not ultimately result in conviction." *Matter of Urena*, 25 I&N Dec. 140, 140 (BIA 2009).

Here, the IJ considered the recency of Petitioner's arrest on suspicion of driving under the influence of alcohol, which, under BIA case law, is an "exceedingly serious offense." (IJ Order at 1.) District courts have held that IJ may rely on criminal arrests so long as the evidence supporting the charge is "probative and specific." *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1005 (N.D. Cal. 2018) (finding a due process violation where IJ relied on limited information from an arrest to justify denial of bond); *see also Solorio Alvarez v. Mullin*, No. 26-CV-4091-GPC-MMP, 2026 WL 2546612 (S.D. Cal. Aug. 27, 2026) (finding evidence presented at bond hearing was not probative and specific to a Petitioner's danger where Petitioner had not admitted to drinking while driving, had not been charged with or convicted of drinking and driving, and did not have a history of criminal convictions).

Petitioner is correct that DHS did not present any evidence of the specific factual circumstances surrounding the arrest, such as "a police narrative, field-sobriety observations, a breath or blood-alcohol result, collision or injury facts, witness testimony, a plea, a conviction, or judgement." (Doc. 12 at ¶ 8.) Had the IJ's dangerousness assessment solely relied on the fact of a single, recent arrest without any additional "probative and specific" evidence as to Petitioners' danger, this Court would have found her application of the clear and convincing standard to be abuse of discretion. *Ortega-Rangel,* 313 F. Supp. 3d at 1005. However, that was not the case here,

as additional "probative and specific" evidence supporting the charge and Petitioner's danger was present in the record. Namely, Petitioner's attorney provided the following statement describing Petitioner's DUI arrest during his rebuttal argument:

> He has been detained for a DUI recently...something which we allege is not in fact the case. He is in fact…uh…uh…detained or was detained with respect to that DUI, but there were no underlying factual circumstances that would indicate any danger to the community. There was no accident, no third parties in the vehicle at the time he was stopped by the police and the record as provided by the Government in the case indicates that [the alleged DUI] took place on July 4 when he was celebrating this country's independence and unfortunately on that day, he was stopped and the Respondent realizes the error of his ways and is contesting the case. Other than that, he has no other criminal history, has no indication of violence and any tendency towards any criminal conduct.

(DAR III at 4:47 – 5:53.) This statement is at best deeply unflattering for Petitioner and at worst, an acknowledgement that he in fact was drinking while operating a vehicle. By making a factual determination that "[Petitioner] has not meaningfully argued that he is not factually innocent" (IJ Order at 1), the IJ was not penalizing Petitioner for failing to affirmatively plead innocence but was remarking on facts in the record that were unfavorable to Petitioner. Neither the clear and convincing standard nor due process requires that IJ's disregard testimony properly submitted on the record that could be interpreted as unfavorable to the party who presented the evidence in the first instance. *See M.K., Petitioner, v. SIXTO MARRERO, Warden of the Imperial Reg'l Det. Facility, et al., Respondents.*, No. 3:26-CV-02499-RBM-MMP, 2026 WL 2944939 (S.D. Cal. Sept. 30, 2026) (finding that it was not an abuse of discretion for an IJ to make an adverse credibility finding against Petitioner based on Petitioner's contradictory and nonresponsive testimony).

As to the IJ's consideration of Petitioner's rehabilitation efforts, Petitioner acknowledges that "[o]bjective evidence of rehabilitation may be relevant to danger." (Doc. 12 at ¶ 29.) Nevertheless, Petitioner argues that because DHS failed to meet their burden of proof to establish that Petitioner is a danger based on a "bare arrest label," the IJ's statement regarding the lack of evidence related to rehabilitation shifted the burden to Petitioner to "disprove" dangerousness. (Doc. 12 at ¶ 25, 29.) The "clear and convincing" standard does not relieve Petitioner of the

burden of production of evidence and testimony to counter the evidence presented by the government. After all, the government cannot be expected to know, for example, about Petitioner's sobriety efforts or any mental health treatment he may be receiving in the future. As to Petitioner's arguments regarding the IJ's "mischaracterization" of Petitioner's letters of support, this again goes to weight of the evidence. *See Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) (finding that "inherent in the IJ's order is a conclusion that the Petitioner's evidence was not as convincing as the Government's evidence").

Lastly, the IJ's citation to *Matter of Panin,* 28 I & N Dec. 771, 772-73 (B.I.A. 2024) did not improperly shift the burden of proof to Petitioner. Pursuant to BIA case law, *Matter of Panin* stands for the position that a respondent's release from federal pretrial criminal custody does not preclude an Immigration Judge from denying a noncitizen's request for release from immigration detention under section 236(a) of the INA, 8 U.S.C. § 1226(a). *See* 28 I & N Dec. at 773. Petitioner is correct that *Matter of Panin* was decided in the context of a section 236(a) custody redetermination hearing where the noncitizen bears the burden of establishing that release is warranted. (Doc. 12 at ¶ 29.) In this sense, *Matter of Panin* is not unique in the IJ's order, as nearly all of the BIA case law cited by the IJ were decided in the context of a section 236(a) custody redetermination. *See e.g., Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *Matter of Siniauskas*, 27 I. & N. Dec. 207 (BIA 2018); *Matter of Choc-Tut*, 29 I. & N. Dec. 48 (BIA 2025). Petitioner's allegations that the IJ's specific citation to *Matter of Panin* somehow infected and displaced the IJ's overall application of the clear and convincing burden of proof is unfounded. The IJ clearly applied *Matter of Panin* to the facts of the present case for the purposes of establishing that IJ's are not bound by the decisions of state courts to release noncitizens from criminal custody following an arrest. (*See* IJ Order at 2.)

In conclusion, the IJ applied the correct legal standard and relied on appropriate factors in denying bond based on petitioner's danger to the community, including the recency and severity of Petitioner's criminal history.

2. <u>Flight Risk Assessment</u>

Next, Petitioner argues that the IJ made an "unexplained leap" from the generalized flight

risk factors outlined in *Matter of Guerra* to a finding that DHS had met its burden by clear and convincing evidence that Petitioner represented a flight risk that no bond or release conditions could sufficiently mitigate. (Doc. 12 at ¶ 36.) Moreover, Petitioner contends that the IJ did not meaningfully address Petitioner's history of compliance with reporting requirements, including the fact that he voluntarily appeared to an ICE check-in five days after his arrest for DUI. (*Id*. at ¶¶ 37, 38.)

Here, Petitioner has failed to demonstrate that the immigration judge's flight risk finding constituted an abuse of discretion. Applying the *Guerra* factors, the Immigration Judge found that DHS met its burden in demonstrating Petitioner to be a risk of flight primarily due to: (1) Petitioner's recent unlawful entry, (2) Petitioner's speculative eligibility for relief either through asylum or through protections under the Convention Against Torture, and (3) Petitioner's decreased incentive to appear or report due to a chance that his efforts to obtain immigration relief will be unsuccessful because of his criminal record. (*See* IJ Order at 2-3.) Although the IJ explicitly acknowledged Petitioner's familial ties to the United States, his work history, his payment of taxes, and other social and community ties, she ultimately concluded that DHS had met its burden by clear and convincing evidence that Petitioner represented a flight risk that no bond or release conditions could sufficiently mitigate. (*Id*. at 3.)

As to the IJ's failure to consider Petitioner's history of compliance with reporting requirements, the Ninth Circuit has explained that an IJ's failure to cite every piece of evidence in the record does not amount to clear error. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1096 (9th Cir. 2000); *See Cole v. Holder*, 659 F.3d 762, 772 (holding that only "potentially dispositive testimony and documentary evidence" must be specifically addressed). "When nothing in the record or the [IJ's] decision indicates a failure to consider all the evidence," a court will rely on the agency's statement that it considered all the evidence before it. *See Cole*, 659 F.3d at 771. But when there is an indication that something is amiss, like if the [IJ] "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," courts do not credit its use of a "catchall phrase" to the contrary. *Id*. at 771-72. Here, Petitioner fails to demonstrate that "something is amiss" regarding the IJ's consideration of the evidence or that his history of

compliance with reporting requirements was "potentially dispositive," *See Cole*, 659 F.3d at 771.

Lastly, despite his contention that he is not asking the Court to "reweigh equities," Petitioner is essentially in essence challenging the sufficiency of the evidence to support a flight risk finding. Such challenges must be presented through the normal immigration appeal process. *See Valenzuela v. Semaia*, Case No. 5:25-cv-02853-SSS-RAO, 2025 WL 4041920, at *2 (C.D. Cal. Dec. 10, 2025) ("Although Petitioner may disagree with the outcome of the IJ's determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue.").

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Petitioner's Motion to Enforce (Doc. 12) is **DENIED**. The case remains **CLOSED**.

IT IS SO ORDERED.

Dated: October 11, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE